IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| United States of America, ) | Case No. : 6:03-cr-01092-JDA-11 |
| ) | |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| Jerry Davis ) | |
| ) | |

This matter is before the Court on Defendant Jerry Davis's ("Davis") motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Davis is serving a 400-month sentence for one count of possession with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and one count of money laundering, in violation of 18 U.S.C. § 1956(h). Because the applicable Sentencing Commission policy statement, *see* U.S.S.G § 1B1.13, and the 18 U.S.C. § 3553(a) factors do not support a further reduction of Davis's sentence, the Court denies his motion.

## Procedural Posture

On April 25, 2022, Davis filed a pro se motion for compassionate release [Doc. 1239 (the "First Motion")], which was denied on June 24, 2022 [Doc. 1253]. On May 4, 2023, Davis filed a renewed pro se motion for compassionate release [Doc. 1260 (the "Second Motion")], raising the same arguments that he raised in the First Motion, which the court denied on May 30, 2023 [Doc. 1261]. On April 25, 2024, Davis filed a subsequent *pro se* motion for compassionate release [Doc. 1280 (the "Third Motion")], again arguing that extraordinary and compelling reasons justify a sentence reduction because (1) he is the only available caregiver for his incapacitated mother, and (2) the

length of his sentence is excessive compared to those of similarly situated defendants in other cases. The Court denied this motion on July 12, 2024. [Doc. 1293.]

On May 11, 2025, Davis, through counsel, filed the instant motion for compassionate release arguing that this Court made no findings on whether a combination of family circumstances, disparity, and rehabilitation under U.S.S.G. § 1B1.13(b)(5) warrant a reduction of sentence. [Doc. 1302-1 at 2 (the "Fourth Motion").] Defendant Davis seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) and U.S.S.G. § 1B1.13(b)(6) asserting as the extraordinary and compelling reason for release: (1) the incapacitation of his mother for whom he is the only available caregiver; (2) the disparity between his sentence and that of his codefendants and (3) his rehabilitative efforts in the Bureau of Prisons ("BOP"). [*Id*. at 3–6.] The Government filed a response in opposition on June 17, 2025. [Doc. 1308.] This matter is ripe for consideration.

## **LEGAL STANDARD**

The United States Court of Appeals for the Fourth Circuit has held that a court "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception to this rule is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Title 18, United States Code, Section 3582(c)(1)(A)(i), commonly known as the "compassionate release" provision, provides a statutory vehicle to modify a defendant's

sentence. *United States v. Wiggins*, No. ELH-13-512, 2020 WL 4436373, at *2 (D. Md. Aug 3, 2020). Section 3582 was adopted as part of the Sentencing Reform Act of 1984. *Id*. The statute originally permitted a court to alter a sentence only at the Bureau of Prisons ("BOP")'s request. *See United States v. McCoy*, 981 F.3d 271, 274 (4th Cir. 2020).

In December 2018, Congress significantly modified the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5194 (2018). This Court has held that as amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a sentence of imprisonment

> upon motion of the Director of BOP, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever occurs first.

*Wiggins*, 2020 WL 4436373, at *2 (cleaned up). And so, once a defendant has exhausted his or her administrative remedies, the defendant may petition this Court directly for compassionate release. *Id*.

Under Section 3582(c)(1)(A), the court may modify a defendant's sentence if, "after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable," it finds that:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that

3

> the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> > and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). Accordingly, to be entitled to relief under Section 3582(c)(1)(A)(i), the defendant must show that: (1) "extraordinary and compelling reasons warrant a reduction of his sentence"; (2) "the sentence modification is consistent with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13" ; and (3) "the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction." *Wiggins*, 2020 WL 4436373, at *3 (internal quotation marks omitted). The United States Sentencing Commission ("the Commission") is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t).

U.S.S.G. § 1B1.13(a) provides, in relevant part,

> (B) . . . Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> > (1) (A) extraordinary and compelling reasons warrant the reduction; or
> >
> > (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> >
> > (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

4

> (3) the reduction is consistent with this policy statement.

Section 1B1.13(b) of the Policy Statement, entitled "EXTRAORDINARY AND COMPELLING REASONS," identifies several circumstances that the Court may consider as "extraordinary and compelling reasons" warranting a reduction in sentence. *See* § 1B1.13(b)(1)-(6). Section 1B1.13(c) of the Policy Statement limits a court's ability to consider changes in the law in determining whether an extraordinary and compelling reason exists under the Policy Statement. Finally, §1B1.13(d) of the Policy Statement "limits the weight a court may assign to a defendant's rehabilitation while serving a sentence." *United States v. Thomas*, No. ELHY-18-0246, 2025 WL 1504831, at *7 (D. Md. May 27, 2025).

Even if a prisoner establishes extraordinary and compelling reasons warrant relief consistent with the Policy Statement, the court must also consider the factors set forth in 18 U.S.C. § 3553(a). These factors include "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public from further crimes of the defendant," and "provide the defendant with . . . training, medical care, or other correctional treatment." 18 U.S.C. § 3553(a). According to the Fourth Circuit, "many case-specific facts fit under the broad umbrella of the Section 3553(a) factors." *United States v. Bond*, 56 F.4th 381, 384 (4th Cir. 2023). Moreover, the district court "enjoy[s] the discretion to give additional weight to any one factor so long as [it] do[es] not confine [its] analysis to that factor." *United States v. Davis*, 99 F.4th 647, 656 (4th Cir. 2024).

5

**DISCUSSION**

**A. Background**[1]

According to the Government, beginning as early as 1997, Davis and other members of the Black Mafia Family ("BMF") ran a sophisticated, organized criminal organization with access to multi-kilogram cocaine sources who distributed cocaine and laundered drug proceeds from South Carolina, Georgia and across the country, including in California and elsewhere. [Doc. 708 (presentence report ("PSR")) ¶¶ 19–43.] The PSR attributed more than 400 kilograms of cocaine and more than $4,000,000 in money laundering transactions designed to promote and continue the purposes of the drug trafficking organization. [PSR ¶¶ 15–43.] Over the life of the conspiracy, its members engaged in multiple acts of violence, including, but not limited to, the September 2004 drug-related homicide of a cooperating defendant and his girlfriend to prevent him from cooperating with law enforcement. [PSR ¶ 26.] The Government agreed not to offer any evidence to support the application of the murder cross reference pursuant to U.S.S.G. § 2D1.1(d)(1) at sentencing as it is unclear who pulled the trigger during the 2004 double homicide. [Doc. 683 ¶ 6.] However, it is clear from the offense conduct detailed in the PSR that Davis was a leading member of a drug conspiracy that orchestrated those murders. [PSR ¶¶ 15–43.]

In 2005, Davis was charged in a five-count Seventh Superseding Indictment. [Doc. 433.] He was charged with conspiracy to possess with intent to distribute and distribution of five kilograms or more of cocaine and 50 grams or more of cocaine base

---

[1] The background is taken from the Government's Response In Opposition outlining the facts from the Presentence Investigation Report in the underlying case. [Doc. 1308.]

(commonly known as "crack" cocaine), a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 (Count 1); and conspiracy to launder money, in violation of 18 U.S.C. § 1956(h) (Count 3). Under § 841(b)(1)(A), Davis faced a statutory mandatory minimum of 10 years to life imprisonment as to Count 1. Under § 1956(a), he was subject to a maximum sentence of 20 years as to Count 3. On March 28, 2006, Davis pleaded guilty to Counts 1 and 3. The plea agreement provided for a stipulated sentence of 480 months pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. [*See* Docs. 544 ¶ 5; 683.] On April 17, 2007, pursuant to the binding plea agreement, the sentencing court imposed a sentence of 478 months' imprisonment as to Count 1 and 240 months as to Count 3, to be served concurrently, plus five years of supervised release. [Doc. 703.]

Effective November 1, 2014, Sentencing Guidelines Amendment 782 reduced the base offense level under U.S.S.G. § 2D1.1(c)(2), which provided for a base offense level of 36 for drug offenses involving at least 150 kilograms but less than 450 kilograms of cocaine. This amendment resulted in a revised Guidelines range of 360 months to life imprisonment. On October 2, 2018, pursuant to Amendment 782 and § 3582(c)(2), the sentencing court reduced Davis's sentence to 400 months' imprisonment plus five years' supervised release. [Docs. 1118; 1127; 1128.]

As of June 6, 2025, Davis has served 19 years, 11 months, and 30 days, which is approximately 60% of his sentence. [Doc. 1308-1 at 3.] Davis's projected release date is September 4, 2033. [*Id*. at 4.]

### B. Arguments by the Parties

#### 1. Davis

Based on new family circumstances[2], Davis requests an evidentiary hearing where he can appear via video conferencing. At the hearing, Davis indicates he will present the live testimony of Frances Davis, Dr. Oluwafunmilala Harke, Mildred Piato[3], and Arthur Sumbry, Jr. to demonstrate the urgency of his family circumstances. [Doc. 1302-1.] Davis contends that his mother's medical providers are abusing her, not bathing her, and

---

[2] The Court notes that the Department of Justice, Federal Bureau of Prisons, responded to Davis's Compassionate Release/Reduction in Sentence request on January 13, 2025, and found that a sentence reduction could not be recommended based on the following:

> 1. **Family Circumstances:** Although AIC Davis is the primary caregiver for his incapacitated mother, Frances Davis, the temporary caregiver, Mildred Piato, remains available until a permanent solution is found.
>
> 2. **Harsh Prison Conditions:** While the COVID-19 pandemic has bene challenging, these conditions affect all AICs universally and do not qualify for compassionate release. Additionally, President Biden terminated the COVID-19 national emergency on April 10, 2023.
>
> 3. **Unusually Long Sentence:** AIC Davis's sentence is consistent with the guidelines at the time of his conviction, and recent legal changes do not apply retroactively.
>
> 4. **Rehabilitation:** AIC Davis's participation in BOP programs is commendable, but does not, on its own, justify a sentence reduction.

[Doc. 1302-2 at 2.]

[3] Mildred Piato was taking care of Davis's mother until July 29, 2024, when her 17-year-old son was shot, forcing her to return to work full time. Piato traveled from Alabama to New Jersey to care for Davis's mother. She is no longer able to do so and does not know anyone besides Davis who can care for his mother. [Doc. 1302-4 at 4.]

stealing her property, and that she suffers from glaucoma, is blind, and suffers from kidney disease and diabetes. [Doc. 1302-7.] Davis contends he is the only available care provider who can, through his power of attorney, manage his mother's home healthcare. [Doc. 1302-1 at 4 n.2.] Davis also argues that, at sentencing, the Court found that he was less culpable than his co-defendant Tremayne Graham ("Graham"), who was sentenced to 360 months, and Davis's sentence should be reduced to reflect the original intent of the Court. [*Id*. at 5, 7.] Based on his rehabilitative efforts, family circumstances, and the disparity of sentences, Davis requests a sentence reduction.

Considering the 3553(a) factors, Davis argues that the Court's June 24, 2022, Order did not account for the Supreme Court's decision in *Concepcion v. United States*[4]. [*Id*. at 6–7.] In support of his motion, Davis contends that, with respect to 18 U.S.C. § 3553(a)(1)—*the nature and circumstances of the offense and the history and characteristics of the defendant*—his sentence should be reduced to be consistent with Graham's 360-month sentence. [*Id*. at 6–7.] With respect to 18 U.S.C. § 3553(a)(2)(A)—*the need to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment*—Davis argues that he has served the "lion's share" of his sentence as he's been in custody for 19 years, 10 months (238 months) as of May 5, 2025. [*Id*. at 7.] With respect to 18 U.S.C. § 3553(a)(2)(B)—*the need to afford adequate deterrence to criminal conduct*—Davis cites to several DOJ papers indicating that "short

---

[4] While Davis argues that the Court's previous Order did not account for the Supreme Court's decision in *Concepcion v. United States*, 597 U.S. 481 (2022), Davis fails to identify the issue the Court failed to address or how *Concepcion* would have affected the outcome. In *Concepcion*, the Supreme Court held that the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce sentences. [*Id*. at 482.] Davis does not identity either a change in law or facts that the Court failed to address.

9

to moderate prison sentences may be a deterrent but longer prison terms produce only a limited deterrent effect . . . ." [*Id*. at 8.] With respect to 18 U.S.C. § 3553(a)(2)(C)—*the need to protect the public from further crimes of the defendant*—Davis argues that his recidivism rate, calculated by the BOP, is low. [*Id*. at 9.] With respect to 18 U.S.C. § 3553(a)(2)(D)—*the need to provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner*—Davis has engaged in every rehabilitative program that has been made available to him. [*Id*. at 9.] He also contends that he will be able to receive more effective medical treatment once released as the BOP is experiencing shortages due to "personnel and cost." [*Id*. at 10.] With respect to 18 U.S.C. § 3553(a)(6)—*the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct*—Davis contends his sentence far exceeds the national average prison sentence imposed for drug trafficking and money laundering in 2023. [*Id*. at 11.] Davis argues that in *United States v. Holton*, 2024 U.S. Dist. LEXIS 214698, at *13 (D. Md. Nov. 25, 2024), the Court found that, where the length of a defendant's sentence is significantly longer than the national or the relevant Circuit average sentence for similar (or more serious) crimes, such disparity can constitute an extraordinary and compelling reason justifying a sentence reduction consistent with U.S.S.G. § 1B1.13(b)(5).

Davis contends that, considering his age along with his efforts at rehabilitation, it is certain he will never again engage in similar criminal activity when released from prison. [*Id*. at 12.] He also contends he is no longer a threat to society and asks this court for mercy. [*Id*.]

10

## 2. The Government

The Government, in opposing Davis's request, contends that under U.S.S.G. § 1B1.13 and 18 U.S.C. § 3582(c)(1)(A), extraordinary and compelling reasons for compassionate exist where the defendant prisoner presents as circumstances "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(C). The Government argues that while Davis may be his mother's closest blood relative, he fails to meet his burden of showing he is the *only* available caregiver when he provides no statements from other family members, and there is no other verifiable evidence to show that he is the only caregiver available. [Doc. 1308 at 8.] There is no indication in his motion that Davis and his family have exhausted all avenues to arrange for a different home healthcare aide nor considered the availability of assisted living facilities now that Ms. Piato is unable to care for his mother. [*Id*. at 8.]

With respect to Davis's arguments regarding undue sentencing disparities, the Government notes that Davis does not argue that a change in the law produces a disparity between his current sentence and the sentence he would receive today under U.S.S.G. § 1B1.13(b)(6), constituting extraordinary and compelling reasons to reduce his sentence under § 3582(c)(1)(A). [Doc. 1308.] The Government argues that to establish a sentencing disparity, the defendant must provide an appropriate comparator and that the statutory sentencing factors are helpful in identifying such a comparator. [*Id*. at 10 (citing *United States v. Omar*, No. 2:11-cr-34, 2024 WL 4786143, at *4 (E.D. Va. Nov. 14, 2024)).] According to the Government, simply comparing two defendants' sentences unmoored from the underlying facts is "treacherous because each sentencing proceeding

11

is inescapably individualized[.]" [*Id.* (citing *United States v. Rivera-Santana*, 668 F.3d 95, 105 (4th Cir. 2012)).]

The Government argues that although Davis and Graham were co-defendants and coconspirators, the two are not similarly situated for sentencing purposes. [*Id*. at 10–11.] The Government contends that Davis remains subject to the sentence he negotiated pursuant to a binding Rule 11(c)(1)(C) plea agreement. [*Id*. at 11.] The global plea agreement also provided for resolutions in his wife's case and in his mother's case. [*Id.* (citing Doc. 544 ¶¶ 13(a), 13(b)).] But for the plea agreement executed in this case, his guideline range would have been life imprisonment based on a total offense level of 43 and a criminal history category of IV. [*Id.*]

The Government argues that, pursuant to § 3553(a)(6), courts have a duty to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." [*Id*. at 12.] However, to establish that he has been subjected to an unwarranted disparity then, a defendant must, at the very minimum, show that a co-defendant with a similar record who has been found guilty of similar conduct received a lesser sentence for that conduct. [*Id*.] According to the Government, Davis has not done so here and notes that the sentencing court specifically found that Davis's 400-month sentence was not grossly disparate from Graham's sentence. [Doc. 1253 at 5–7.]

With respect to Davis's rehabilitation efforts, the Government argues that the amended policy statement recognizes: "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this

policy statement." [Doc. 1308 at 13 (citing U.S.S.G. § 1B1.13(d)).] The Government notes that

> According to his record, Davis was sanctioned for: phone abuse (August 2024) an infraction that occurred after the court denied his third motion for compassionate release. Additional reported infractions are as follows: phone abuse (2020); possession of a cell phone/hazardous tool (2019); possession of a cell phone/hazardous tool (2017); possession of a cell phone/hazardous tool (2016); possession of an unauthorized item; cell phone (2015); possession of razor blade in SHU (segregated housing unit) (2012); possession of a cell phone/hazardous tool (2012); phone abuse (2010); and refusal to obey and order (2007).

[*Id*. at 13.] The Government argues that while Davis argues he is a "low recidivism" offender and that he poses "no danger to the community as he is a non-violent offender," the nature and circumstances of his crimes indicate otherwise. [*Id*. at 14.]

With respect to the § 3553(a) factors, the Government argues that these factors counsel against granting the rare remedy of a reduction in Davis's case. First, considering the "*history and characteristics*," the Government contends that Davis's "criminal history shows that he is at a high risk of recidivism. Despite the leniency he was afforded, he repeated the same types of crimes which became increasingly serious over time." [*Id*. at 16.] As for the "*nature and circumstances*" of the offense, the Government contends that "Davis was not a small-time drug dealer. Davis led members of the Black Mafia Family ("BMF"), a sophisticated, organized bicoastal criminal organization with access to multi-kilogram cocaine sources who distributed cocaine and laundered drug proceeds from South Carolina, Georgia and across the country to California and elsewhere." [*Id*. at 16.] "At the time of his arrest in California on June 16, 2005, the defendant was found leaving a stash house that stored 250 kilograms of cocaine, more than $1.8 million in U.S.

13

currency, and a cache of firearms." [*Id*.] "Over the life of the conspiracy, its members engaged in multiple acts of violence, including but not limited to, the September 2004 drug-related homicide of a cooperating defendant and his girlfriend in order to prevent him from cooperating with law enforcement and testifying at trial." [*Id*. at 16–17.]

### C. Threshold Requirements for Compassionate Release

After analyzing and weighing the entire record, the Court finds that Defendant has not met his burden of proving that there are "extraordinary and compelling reasons" for the grant of compassionate release or any other basis for the grant of compassionate release. Davis first argues that extraordinary and compelling reasons exist under U.S.S.G. § 1B1.13(b)(3) because he is the only available caregiver for his incapacitated mother. Section 1B1.13(b)(3)(C) provides that "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" may constitute an extraordinary and compelling reason for a sentence reduction. While the Court empathizes with Davis's desire to care for his mother, the Court finds that Davis has failed to show that he is the only available caregiver for her.

The Medical Release provided by Dr. Oluwafunmilala Harke and attached to Davis's motion specifically states that "it is recommended that the patient continue to have 24-hour care as provided through her HHA/Home health aide." [Doc. 1302-3.] While it appears there may have been issues in the past with a prior home aide [*see* Doc.1302-4 at 3 ("Willie Long")], there is no evidence that a suitable home health aide could not be provided for Davis's mother from the same or a different home healthcare agency. The Medical Release in no way suggests that a suitable home health aide is not available to his mother, only that she is in need of one. Additionally, a letter from Arthur Humbry, Jr.,

14

the Russel County Coroner, indicates that if Davis is unable to come home, his mother will be "forced into an assisted living home" and that this will be "financially unstainable." [Doc. 1302-6.] That said, other than his bare assertion, there was no evidence, financial or otherwise, provided to the Court to support this conclusion.

In seeking compassionate release, Davis "bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction." *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021). And while his mother may benefit from his presence at this stage in her life, it does not render his family circumstances extraordinary and compelling. *See United States v. Ingram*, 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary."). For these reasons, the Court finds that Davis has failed to show extraordinary and compelling reasons due to his family circumstances.

### D.   The § 3553(a) Factors

The Court has found that the threshold requirements of compassionate release have not been met. However, even if extraordinary and compelling reasons for compassionate release had been found, the Court would not grant the motion after weighing the relevant § 3553(a) factors.

As to the "*nature and circumstances of the offenses and seriousness of offenses*", Davis argues that his sentence should be reduced consistent with this co-defendant Graham who received 360 months. [Doc. 1302-1 at 6–7.] Davis also argues that he has served the "lion's share" of his sentence and that studies show that longer prison terms have only limited deterrent effect. [*Id*.at 7–8.] However, as stated in the Court's June 24, 2022, Order:

> Davis's offenses in the instant case were very serious, involving a large and extremely sophisticated drug conspiracy and money laundering. Davis was a leader in this organization. The drug conspiracy continued for a lengthy period of time and involved large amounts of drugs and money[] and a propensity for violence, including the murder of a cooperating co-defendant and his girlfriend to prevent the co-defendant from testifying at trial. (Tr. at 15-20, ECF No. 1156.) In addition, although Davis describes his criminal record as minor, his prior convictions are not insignificant, including convictions for possessing drugs, resisting arrest, driving under the influence, fleeing the police, giving false information, possessing a forged instrument, and theft. (PSR ¶¶ 48-55.) Further, [Davis] has had several disciplinary violations during his incarceration, including phone abuse, possessing a contraband cell phone, possessing a hazardous tool, possessing an unauthorized item, and possessing a razor blade. (Disciplinary Records, ECF No. 1251-1.)

[Doc. 1253 at 6.] Upon review, the Court notes that the nature and circumstances of the underlying offense teach that Davis has proved to be a danger to society. Davis's rehabilitation and future potential to assist the community does not relinquish the seriousness of his crimes and the need for him to serve a sentence reflective of that fact. *See* § 3553(a)(2) (explaining that the sentence needs "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense").

Addressing the "*history and characteristics of defendant,*" Davis contends that he will never be involved in any type of criminal activity again, and requests that this Court reconsider its previous conclusion that his "400-month sentence is more than appropriate in light of his history and characteristics and the seriousness of his conduct in an extensive and violent drug conspiracy." [Doc. 1302-1 at 6 (internal quotation marks omitted).] Davis also argues that his sentence should be reduced to be consistent with that of his co-defendant Graham. [*Id*. at 7.] However, considering his history and characteristics, the

16

record shows that Davis had not been legitimately employed since 2004; had substance abuse issues sufficient to warrant residential drug treatment; and had a significant criminal history before his arrest in this case. [Doc. 1308 at 9 n.4.] Additionally, this Court has previously determined that there was no significant disparity between Davis's and Graham's sentences based on their individual criminal histories and participation in the drug trafficking organization. [Doc. 1253 at 5–6.] Davis raises no new argument on this issue that was not previously addressed by the sentencing judge.

Looking to the need to "*provide just punishment and promote respect for the law,*" Davis argues that "compassionate release is generally granted only [to] defendants who have already served the lion's share of their sentence" and that he has been in custody for 19 years, 10 months (238 months). [Doc. 1302-1 at 7.] He also argues that his sentence far exceeds the national average prison sentence for drug trafficking in 2023. [*Id*. at 11.] The Court does not find these arguments persuasive. Davis provides no information regarding whether the facts of his case would result in a different or lower guideline range based on his criminal history and the facts underlying his conviction. To the contrary, Davis merely speculates, without evidence or explanation, regarding his ability to receive a sentence that is more like the national average for drug trafficking convictions in 2023. Davis's rehabilitation and future potential to assist the community do not negate the seriousness of his crimes and the need for him to serve a sentence reflective of that fact. *See* § 3553(a)(2) (explaining that the sentence needs "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense").

With respect to *"protecting the public from further crimes of the defendant and deterring future criminal conduct",* the Court notes that a substantial sentence is critical as a specific deterrent and as a protection to the public from further crimes of the Defendant.  As to Davis's arguments regarding his rehabilitation in prison, the Court notes that while Davis has made significant efforts toward rehabilitation, these efforts simply do not outweigh the seriousness of his crimes, his extensive criminal history, and the danger that he poses to the public.  Furthermore, as the Government points out, it is clear from his prison disciplinary record that he has not been rehabilitated in that he was sanctioned for: phone abuse (August 2024) an infraction that occurred after the Court denied his third motion for compassionate release; phone abuse (2020); possession of a cell phone/hazardous tool (2019); possession of a cell phone/hazardous tool (2017); possession of a cell phone/hazardous tool (2016); possession of an unauthorized item; cell phone (2015); possession of razor blade in SHU (segregated housing unit) (2012); possession of a cell phone/hazardous tool (2012); phone abuse (2010); and refusal to obey and order (2007). [Doc. 1308 at 13.]  These infractions at least confirm Davis's pattern of recidivism and cast doubt on the effectiveness of his rehabilitation efforts.

## **CONCLUSION**

Upon considering Davis's arguments regarding his family circumstances, the alleged disparity in sentencings, and his rehabilitation efforts, the Court finds Davis has failed to show extraordinary and compelling reasons supporting a reduction in sentence. Based on the foregoing and considering the relevant § 3553(a) factors, the Court declines to exercise its discretion with respect to Davis's motion for compassionate release.  Thus, it is hereby ORDERED that Davis's motion for a reduction in his sentence [Doc. 1302] is

DENIED. Further, considering the record before the Court, the Court declines Defendant's request to hold a hearing on this matter.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin<br>United States District Judge

November 3, 2025
Greenville, South Carolina

## NOTICE OF RIGHT TO APPEAL

Defendant Davis is hereby notified that he has the right to appeal this order within fourteen (14) days from the date hereof, pursuant to Rule 4 of the Federal Rules of Appellate Procedure.